**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **HARVELL HOOD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 2:17-cv-02869-SHM** |
| ) | |
| **CITY OF MEMPHIS PUBLIC WORKS** ) | |
| **DIVISION,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant City of Memphis Public Works Division's (the "City") November 2, 2020 Motion for Summary Judgment (the "Motion"). (D.E. No. 69.) Plaintiff Harvell Hood ("Hood") responded on December 1, 2020. (D.E. No. 71.) The City replied on December 14, 2020. (D.E. No. 73.)

**I.    Background**

Hood filed a complaint pro se on November 29, 2017. (D.E. No. 1.) On January 31, 2018, on the Magistrate Judge's recommendation, the Court dismissed all of Hood's claims except a Title VII retaliation claim. (D.E. No. 9, 6.) Neither party objected to the Magistrate Judge's report and recommendation. (Id. at 5.) On April 24, 2018, Hood's attorney notified the Court that he had been retained. (D.E. No. 12.)

On September 9, 2018, Hood filed a Second Amended Complaint (the "Complaint"). (D.E. No. 28.) Hood brings six claims. He brings one claim of retaliatory discharge under 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and the Tennessee Human Rights Act (the "THRA"), Tenn. Code Ann. §§ 4-21-101, et seq., for "refusing to allow Plaintiff to come to work." (D.E. No. 19, ¶¶ 30-36.) He brings three claims of retaliatory failure-to-hire under § 1981, § 1983, Title VII, and the THRA, because the City denied him a truck driver ("Mechanical Operator") position and a Heavy Equipment Operator position, and failed to transfer him to a full-time position.[1] (Id. at ¶¶ 20-29.) He brings one claim of racial discrimination under § 1981, § 1983, Title VII, and the THRA. (Id. at ¶¶ 37-40.) He brings one claim of retaliatory discharge under the Tennessee Public

---

[1] In the Complaint, Hood refers to his retaliatory failure-to-hire claims as denial of a truck driver position and a Heavy Equipment Operator position. (See D.E. No. 1, ¶¶ 20-26.) Hood uses the terms Heavy Equipment Operator and Mechanical Operator interchangeably in his Complaint. (See Id.) He does not address this issue in his response. Hood applied for a Mechanical Operator position and had the lowest score of any applicant on the test. (D.E. No. 69-6, 25.) The City's Heavy Equipment Operator position required a license that the City knew Hood did not have. (Id. at 26.) In his deposition, Hood described the Mechanical Operator position as a "Mechanical Operator, Truck Driver." (D.E. No. 69-26, 93.) For purposes of this order, Mechanical Operator will apply to Hood's truck driver claim, and Heavy Equipment Operator will apply to his Heavy Equipment Operator claim.

Protection Act (the "TPPA"), Tenn. Code Ann. § 50-1-304, and the common law of whistleblower retaliatory discharge.  (<u>Id.</u> at ¶¶ 21-50.)

The City's Motion is supported by a statement of undisputed material facts.  (D.E. No. 69.)  In his response, Hood agrees, or agrees for the purposes of deciding the Motion, to all of the City's statements of undisputed fact except ¶¶ 15-16 and ¶¶ 40-42.  (<u>See</u> D.E. No. 71, 1-6.)  Paragraphs 15-16 represent that Hood applied for and took the test for a Mechanical Operator position. (D.E. No. 69-2, ¶¶ 15-16.)  Paragraphs 40-42 represent that Hood stopped attending his doctor's appointments, that Sedgwick Claims Management Services, Inc. ("Sedgwick") had not heard from Hood, and that Sedgwick advised Hood that Sedgwick was closing his file.  (<u>Id.</u> at ¶¶ 40-42.)   Hood's response contains his own statement of undisputed facts.  (D.E. No. 71-2, 1-5.)  Hood's statement includes his conclusion that the City retaliated against him.  (<u>See</u> <u>Id.</u>)  The City disputes most of Hood's purportedly undisputed facts.  (<u>See</u> D.E. No. 73.) Local Rule 56.1 does not provide for the nonmoving party to submit a statement of undisputed facts.  <u>See</u> L.R. 56.1(b).  The Court will not consider Hood's statement of undisputed facts, except to the extent they may be broadly construed to respond to the City's statement.

Hood worked for the City as a temporary part-time employee cleaning temporary sewer screens at the Stiles facility in Memphis.  (D.E. No. 66-8, ¶ 4.)   Temporary employees work 56 hours in a two-week pay period.  (D.E. No. 69-20, 21.) All of the temporary part-time workers at Stiles were African-American. (D.E. No. 69-22, 81-82.)

Hood's supervisor, Jeff Alloway, told Hood and other workers to "suck my penis" and made other lewd statements.  (D.E. No. 69-26, 39.)  Hood considered those statements sexual harassment. (Id.)  In his deposition, Hood testified that Alloway used racial slurs on the job.  (D.E. No. 69-26, 60.)  Hood reported Alloway's comments to the Equal Employment Opportunity Commission (the "EEOC") in September 2016.  (Id. at 85.)  At the same time, Hood reported his working conditions to the Occupational Safety and Health Administration.  (Id.)  Hood alleged in his reports that he had been subjected to demeaning and racially offensive comments made by his White supervisors.  (Id. at 44.)  Hood also reported his concerns to management.  (Id. at 49-50.)

Jack Keith, a manager at the Stiles facility, swore in his affidavit that he met with Hood in September 2016 to discuss Hood's complaints about Alloway.  (D.E. No. 69-12, ¶ 6.)  Keith held a hearing on November 15, 2016.  (D.E. No. 11.)  Alloway admitted he had made the sexual comments, but not the racial ones.  (Id. at ¶ 11.)  The hearing panel suspended Alloway for

4

five days and ordered him to attend a counseling program.  (Id. at ¶ 12.)

On October 13, 2016, Hood injured his left knee while working.  (D.E. No. 69-12, ¶ 14.)  He entered the City's On the Job Injury ("OJI") medical rehabilitation program.  (Id. at ¶ 15.)  He was left on the City's payroll so that he could be eligible for continued OJI services.  (Id. at ¶ 16.)  Hood believed he was still employed by the City when he first filed this suit because the City had not told him that he was no longer employed.  (D.E. No. 69-26, 17-18.)  He was not receiving pay. (Id. at 19.)

The Stiles project ended in December 2016.  (D.E. No. 69-12, ¶ 23.)  Another facility needed temporary workers, and the other Stiles workers, with one exception, were transferred to that facility.  (Id.)  Keith did not remember talking to Hood in early 2017 about employment, but Hood would not have been considered for a permanent position without medical authorization to return to work.  (Id. at ¶ 19.)  Temporary employees who sought full-time positions were required to apply through the City's Human Resources Division before being considered.  (Id. at ¶ 30.)

In his affidavit, Keith swears that Hood took a test for a Mechanical Operator position with the City.  (D.E. No. 69-12, ¶¶ 20-21.)  Hood had the lowest test score of the six applicants.

(Id.)  Hood testified, in his deposition, that he did not take a test, but had an interview with three people instead.  (D.E. No. 69-26, 97.)  He testified that he was asked to do "a full walk-around for a CDL driving course."  (Id. at 96-97.)  He testified that he was interviewed by three people and that they asked him questions.  (Id. at 96-97.)  He testified that it was not a "test" because "he had no pamphlets in front of [him]." (Id. at 96.)

Hood did not apply, or "re-apply," for any jobs with the City.  (Id. at 27-28.)  When he talked to Keith about a Heavy Equipment Operator position in July 2017, Keith told him that only applicants with a Class B Commercial Driver's License would be considered.  (See Id. at ¶ 29.)  Hood wanted to apply for a license, but he could not get the license for free without being a City employee.  (D.E. No. 69-26, 90-91.)  He did not get it. (Id. at 105.)

Hood's OJI treatment was overseen by Sedgwick, a third-party claims processing service.  (See D.E. No. 69-24, 6-9.)  The City's OJI policy required that an employee follow the treating physician's orders and warned that a claim could be denied for failure to follow orders.  (D.E. No. 69-24, 13.)  The City had to approve Sedgwick's denial of a claim.  (D.E. No. 69-24, 36.)

On March 23, 2017, Sedgwick sent a letter to Hood informing him that he had missed an appointment, and that failure to comply

with the treating physician's orders was a ground for denial of his claim. (D.E. No. 69-22, 70.) On June 9, 2017, Keith learned from Sedgwick that Hood had stopped attending his scheduled treatment appointments. (D.E. No. 69-12, ¶ 26.) The same day, Sedgwick received a telephone call from the City asking about the status of the case. (D.E. No. 69-24, at 67.) Sedgwick told the City that the case had been closed because Hood had missed his appointment and had not responded to Sedgwick's letter. (Id. at 67.) On June 9, 2017, after receiving approval from the City, Sedgwick sent a letter to Hood informing him that, because he had failed to attend his March appointment and had not been in contact with Sedgwick since May 17, 2017, his claim had been closed. (Id. at 72.) Both of Sedgwick's letters were returned undelivered. (Id. at 45.) On June 22, 2017, the City's Human Resources Division received a Separation from Payroll form from the City's Public Works Division. (Id. at ¶ 27.) The City does not send separation letters. (Id. at ¶ 28.)

In his affidavit attached to the Motion, Hood swears that his physician told him he could return to work. (D.E. No. 71-3, ¶ 5.) Hood swears that his physician asked him to obtain a new appointment in a few months, but did not give him a date. (Id. at ¶ 6.) According to Hood, his physician's office always set Hood's appointments when he was at the office. (Id. at ¶ 7.) Hood swears that the office never contacted him to set an

7

appointment or remind him he had an appointment.  (Id. at ¶¶ 8-9.)  Hood also swears that he received no communication from Sedgwick about missing an appointment.  (Id. at ¶ 10.)

The City's policy is to allow an employee to return to work only after Sedgwick has cleared him for full duty.  (D.E. No. 69-22, 89.)  A City employee, Alvin Childers, testified that the City had never received a return-to-work document from Sedgwick for Hood.  (Id. at 90.)  According to Sedgwick, on February 16, 2017, Hood's physician released him to return to work, but Hood had to return to his physician for a follow-up appointment.  (D.E. No. 69-24, 60.)  The return-to-work form for Hood's knee injury was in his file with Sedgwick.  (Id. at 62-63.)

## II.  Jurisdiction

The Court has federal question jurisdiction. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  Hood asserts a right to relief against the City for employment discrimination in violation of federal law. (D.E. No. 28.)

The Court has supplemental jurisdiction over Hood's state law claims.  See 28 U.S.C. § 1367(a).  Those claims derive from a "common nucleus of operative fact" with Hood's federal claims against the City.  See United Mine Workers of Am. v. Gibbs, 383

U.S. 715, 725 (1966); Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 588 (6th Cir. 2016); see also 28 U.S.C. § 1367(a).

## III. Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of its case.  See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c).  "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'"  EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)).  The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir.

2018) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." <u>FDIC v. Jeff Miller Stables</u>, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

## IV.  Analysis

### A.   Retaliation Claims

Title VII requires equal opportunity in employment. 42 U.S.C. § 2000e-2. An employer is prohibited from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII." <u>Laster v. City of Kalamazoo</u>, 746 F.3d 714, 729 (6th Cir. 2014); 42 U.S.C. § 2000e-3(a). "In order to find a *prima facie* case of retaliation under Title VII a plaintiff must prove by a preponderance of the evidence: 1) plaintiff engaged in activity protected by Title VII; 2) plaintiff's exercise of his civil rights was known by the defendant; 3) that, thereafter, the

defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action." E.E.O.C. v. Avery Dennison Corp., 104 F.3d 858, 860 (6th Cir. 1997). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to provide a legitimate non-retaliatory reason for its actions. Morris v. Oldham Cty. Fiscal Court, 201 F.3d 784, 792-793 (6th Cir. 2000) (applying legitimate, non-retaliatory framework to a Title VII retaliation claim). If the defendant produces that evidence, the plaintiff must prove that the legitimate non-retaliatory reason was pretextual. Chen v. Dow Chem. Co., 580 F.3d 394, 402 (6th Cir. 2009) (applying pretext to a Title VII retaliation claim).

Hood claims retaliation under the THRA and § 1981. The Court need not conduct a separate analysis under those statutes because they are analyzed identically to Title VII. See Cooper v. City of N. Olmsted, 795 F.2d 1265, 1270 n. 3 (6th Cir. 1986) (declining to discuss Title VII retaliation claim and § 1981 retaliation claim separately because "liability under both statutes rests on the same grounds"); Mullins v. Goodyear Tire & Rubber Co., 291 F. App'x 744, 745 n. 1 (6th Cir. 2008) ("The THRA is a state law analogue to Title VII and the statutes are analyzed identically").

Hood claims that the City violated 42 U.S.C. 1983. "Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII." Day v. Wayne Cty. Bd. of Auditors, 749 F.2d 1199, 1204 (6th Cir. 1984). Because Hood's retaliation claims are based on a violation of Title VII, he is not entitled to bring § 1983 claims.

**1. Retaliatory Discharge**

Hood satisfies his burden as to the first three factors of a prima facie case of retaliatory discharge. He engaged in protected activity, his exercise of his rights was known to the City, and the City took employment action adverse to him. See, Avery, 104 F.3d at 860. In September 2016, Hood reported Alloway's actions to the EEOC and to the City. (D.E. No. 69-26, 85; see D.E. No. 69-12, ¶ 6.) The City held a hearing and sustained Hood's complaint. (D.E. No. 69-12, ¶¶ 11-12.) The City ultimately removed Hood from its payroll on June 22, 2017. (See id. at ¶ 27.)

The causal connection factor requires the plaintiff to "produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). Evidence that the defendant treated the plaintiff differently from similar employees, or evidence that the adverse action and the

plaintiff's exercise of his rights occurred within a short time, can support a finding of causation.   Id.   ("Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation.")   "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met."   Id.

Hood has not met his burden to show a causal connection between his protected activity and the City's adverse action. There is a dispute of fact about the circumstances surrounding Hood's missing his doctor's appointment, but the facts at issue are not material.   Hood asserts, in the affidavit attached to his response to the Motion, that the doctor treating him told him that he could return to work with no restrictions on January 26, 2017.[2]   (D.E. No. 70, ¶ 5.)   Hood knew that the doctor wanted

---

[2] The City argues in its reply that Hood's affidavit does not conform to Rule 56(c)(4) because statements in an affidavit must be based on personal knowledge and the declarant must be competent to testify on the matters stated. See Fed.R.Civ.P. 56(c)(4).   Courts have held that those requirements may be inferred.   See CBR Funding, LLC v. Jones, No. 13-1280, 2014 WL 11456080 at *3 (W.D. Tenn. Nov. 4, 2014); Phinnessee v. Young Touchstone Co., No. 09-1084, 2011 WL 184017 at *3 n. 5 (W.D. Tenn. Jan. 20, 2011).   Some of the statements in Hood's affidavit do not satisfy Rule 56.   For example, his statement about why the City terminated him and his statement that the City encouraged Sedgwick to terminate him are not based on personal

to follow up with him.  (See id. at ¶ 6.)  Hood says that the practice of the doctor's office was to set his next appointment before he left the office.  (Id. at ¶ 7.)  He says that the doctor's office did not set an appointment before he left, and that it did not contact him later to tell him he had an appointment.  (Id. at ¶¶ 8-9.)  Accepting Hood's affidavit as true, Hood was not aware that he was required to attend another doctor's appointment.

There is no genuine dispute of material fact about the circumstances that would support a causal connection between Hood's protected reporting and his termination.  The Stiles project ended in December 2016.  (D.E. No. 69-12, ¶ 23.)  Hood had been hired as a temporary worker for that project.  (D.E. No. 66-8, ¶ 4.)  Other temporary workers were transferred to a new project when the Stiles project ended.  (D.E. No. 69-12, ¶ 23.)  When they were transferred, it is undisputed that Hood had not been cleared to return to work.  (See D.E. No. 69-24, 62.)  Sedgwick terminated Hood's claim because he had missed his

_____

knowledge or information about which he is competent to testify.  (See D.E. No. 71-3, ¶¶ 3, 12.)  However, his statements about what happened at his physician's appointment, what he believed the practice of the office was, and what communication he received are properly before the Court because the requirements of Rule 56 can be inferred.

appointment, he had not responded to its letter, and the City had authorized it to do so. (D.E. No. 69-22, 71; D.E. No. 69-24, 36.) The City removed Hood from its payroll when it learned that his claim had been terminated. (D.E. No. 69-12, ¶ 27.)

Hood has not introduced any facts that show the City's decision to terminate his employment was causally connected to his protected reporting. At most, Hood has shown that the doctor's office or Sedgwick, the third-party claims processor, made an error. (See D.E. No. 70, ¶¶ 7-9.) That does not create a genuine dispute of material fact about retaliatory discharge because the temporary project for which Hood was employed had ended. (See D.E. No. 69-12 ¶ 23.) Hood introduces no evidence to show that Sedgwick's decision to terminate his treatment or the City's decision to terminate his employment was causally connected to Hood's protected reporting.

Even if that Hood had established a prima facie case, he has not otherwise met his burden. If the plaintiff establishes a prima facie case, the employer has the burden of producing a legitimate non-retaliatory reason for terminating the plaintiff. Hamilton v. Gen. Elec. Co., 556 F.3d 428, 436 (6th Cir. 2009) ("Because we conclude that Hamilton has established a prima facie case of retaliation, we consider whether GE has satisfied its burden of producing a legitimate nonretaliatory reason for terminating Hamilton."). The City's proffered legitimate non-

15

retaliatory reasons for terminating Hood are that the Stiles project had ended and that he was kept on the payroll for medical benefits that ended when his treatment was terminated. Although there is a dispute of fact about whether Hood was aware that he had another doctor's appointment, there is no dispute that Hood was a temporary employee and that the Stiles project had ended before he was terminated. There is no dispute that the City terminated Hood based on Sedgwick's representations that Hood had missed his appointment and failed to respond to Sedgwick's letter. The City asserts legitimate non-retaliatory reasons for terminating Hood.

If the employer meets its burden to show a legitimate non-retaliatory reason for its decision, the plaintiff must show that the employer's reason was pretextual. See George v. Youngstown State Univ., 966 F.3d 446, 462 (6th Cir. 2020) (applying pretext to a Title VII retaliation claim). "Pretext is established by a direct showing that a discriminatory reason more likely motived the employer or by an indirect showing that the employer's explanation is not credible." Kline v. Tennessee Valley Auth., 128 F.3d 337, 342-343 (6th Cir. 1997), quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981); George, 966 F.3d at 462 (applying the Kline definition of pretext to a Title VII retaliation claim). There are "three primary methods by which plaintiffs generally show pretext: by

16

showing that the proffered reason, (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action." Joostberns v. United Parcel Servs., Inc., 166 F. App'x 783, 790-791 (6th Cir. 2006); Bhama v. Mercy Mem'l Hosp. Corp., 416 F. App'x 542 (6th Cir. 2011) (applying Joostberns to a Title VII retaliation claim).  Hood has failed to show that the City's reasons were pretextual.

The employer's "honest-belief" in the proffered reason protects it, even if that reason is shown to be "mistaken, foolish, trivial, or baseless." Wright v. Murray Guard, Inc., 455 F.3d 702, 707-708 (6th Cir. 2006), quoting Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998).  The "honest-belief rule" applies to Title VII retaliation claims.  See Balmer v. HCA, Inc., 423 F.3d 606, 614 (6th Cir. 2005), abrogated on other grounds by Fox v. Vice, 563 U.S. 826, (2011).  In the Sixth Circuit, the employer must show that it reasonably relied on particular facts before it to invoke the "honest-belief" doctrine.  Wright, 455 F.3d at 708.  The plaintiff may then produce contrary evidence.  Id.  The plaintiff's "bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." Joostberns, 166 F. App'x at 791.  "In deciding whether an

employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." Smith, 155 F.3d at 807.

The "honest-belief" doctrine applies here.   Hood's only argument in response to the City's Motion is that Hood's doctor never scheduled an appointment for him and that he did not actually miss a scheduled appointment.   Although there is a dispute of fact about whether Hood's doctor told Hood when his next appointment was, there is no genuine dispute of material fact about whether the City acted based on its honest belief that Hood had missed his appointment.  Sedgwick, the third-party claims processor, told the City that Hood had missed his appointment and that he had not responded to its letter.  (See D.E. No. 69-22, 70-72.)   Based on that information, the City authorized Sedgwick to terminate Hood's claim. (D.E. No. 69-24, 48.)  Once Sedgwick had received approval from the City, Sedgwick had the authority to terminate the claim.  (Id. at 48.)  It did so.  (Id. at 49.)  The City then removed Hood from its payroll. (D.E. No. 69-12, ¶ 27.)   Hood provides no evidence that the City's reliance on Sedgwick was dishonest or unreasonable or

that it had no basis in fact. Hood's entire argument is based on an alleged non-material factual error.  The City relied on Sedgwick to process Hood's claim.  (See D.E. No. 69-24, 6-9.) The City made a reasonable and informed decision because it relied on particularized facts from Sedgwick that Hood had missed an appointment and that Hood had not communicated with Sedgwick or responded to its letter.  The City had an honest belief that Sedgwick's facts were accurate.  Hood has not shown otherwise.

Hood's retaliatory discharge claim under Title VII, § 1981, § 1983, and the THRA is **DISMISSED.**

### 2. Retaliatory Failure-to-Hire Claims

Hood claims that City retaliated against him by failing to hire him as a Mechanical Operator or a Heavy Equipment Operator, and by denying him full-time employment.  Failure-to-hire can be the basis for a Title VII retaliation claim.  See Lyons v. Metro. Gov't of Nashville & Davidson Cty., 416 F. App'x 483, 489 (6th Cir. 2011); Volling v. Kurtz Paramedic Servs., Inc., 840 F.3d 378, 383 (7th Cir. 2016).  In this Circuit, that claim is analyzed using the same factors as any other Title VII retaliation claim, not by using the framework applicable to a failure-to-hire claim. See Lyons, 416 F. App'x at 489.

Hood's failure-to-hire claims fail because no reasonable jury could conclude that there was a causal connection between

Hood's reporting and the City's failure to hire him.  Hood does not provide any argument in his response to support his failure-to-hire claims.  The City had legitimate non-retaliatory reasons not to hire Hood for the positions at issue.  In his deposition, Hood disputed that he took a test for a Mechanical Operator job with the City.  (D.E. No. 69-26, 92-96.)  However, a close review of his deposition demonstrates that he disputes the characterization of the event as a "test" because he "had no pamphlets in front of [him]."  (Id. at 96.)  Hood admits that he was asked a series of questions and that there were three people in the room.  (Id. at 96-97.)  Hood had the lowest score and was not offered the job.  (D.E. No. 69-12, ¶¶ 20-21; D.E. No. 6, 25.)  The City's decision not to offer Hood the job was a result of his low score.  He has introduced no evidence that the decision was retaliatory or that the City's reasons were pretextual.

Hood expressed interest in a Heavy Equipment Operator position, but it required a Class B Commercial Driver's License, which Hood did not have.  (See D.E. No. 69-12, ¶ 29.)  He did not apply.

Hood's argument that the City retaliated against him by refusing to transfer him to full-time work or to hire him for another job is not well taken.  Hood did not apply for any other job with the City.  (D.E. No. 69-26, 27-28.)  Temporary employees

are required to apply through the City's Human Resources Division to be considered for employment.  (See D.E. No. 69-12 at ¶ 30.) Hood never applied for any additional job with the City, and he was not qualified for the two jobs about which he inquired.

Hood's failure to apply for jobs and lack of qualifications are legitimate non-retaliatory reasons for the City's failure to hire him.  Hood provides no evidence or argument that the City's decisions were pretextual or that would overcome the City's "honest-belief" that he was not qualified for the two jobs about which he inquired and for which he did not apply.

Hood's retaliatory failure-to-hire claims are **DISMISSED.**

**B.    Tennessee Public Protection Act and Common Law Whistleblower Retaliatory Discharge**

Hood claims that the City violated the TPPA and the common law of whistleblower retaliatory discharge.

To establish a claim of retaliation under the TPPA, the plaintiff must prove the following four elements: "(1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, 'illegal activities' as defined under the Act; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination." Franklin v. Swift Transp. Co., 210 S.W.3d 521, 669-670 (Tenn.

Ct. App. 2006), citing Tenn. Code Ann. § 50-1-304.  The TPPA expressly requires that retaliation be the sole cause of termination.  Levan v. Sears, Roebuck & Co., 984 F. Supp. 2d 855, 869 (E.D. Tenn. 2013).  "[T]he employer need only introduce admissible evidence showing that unlawful retaliation was not the sole cause of the employment action.  That is, the employer must proffer evidence that, even if retaliation was the motivation for the discharge, there was at least one non-retaliatory reason as well."  Williams v. City of Burns, 465 S.W. 3d. 99, 115 (Tenn. 2015).

There is no dispute that retaliation was not the City's sole reason for terminating Hood.  Hood does not discuss this issue in his response.  He was removed from the payroll because he missed his doctor's appointment and because his temporary job had ended.  (D.E. No. 69-12, ¶¶ 23, 26-27.)  Although there is a dispute of fact about whether Hood missed his doctor's appointment, there is no genuine dispute of material fact about whether the Stiles job had ended or whether the City believed Hood had missed his appointment based on the representations of Sedgwick, which ultimately terminated Hood's claim.  For those reasons, no reasonable jury could conclude that retaliation was the sole reason for Hood's termination.

Hood's claim that the City violated common law whistleblower protection is not well taken.  The TPPA "abrogates and supersedes

the common law with respect to any claim that could have been brought under this section." Tenn. Code Ann. § 50-1-304(g); Williams, 465 S.W. 3d at 110 n. 11 ("under the statute as amended, in cases in which the plaintiff alleges retaliatory discharge for refusing to participate in illegal activities or for refusing to remain silent about illegal activities, the TPPA is the exclusive basis for relief"). Hood's claim is based on the TPPA and cannot proceed under the common law.

Hood's claim that the City violated the TPPA and common law is **DISMISSED**.

### C.   Title VII Racial Discrimination

In his Second Amended Complaint, Hood brings one claim of Title VII racial discrimination. That claim was dismissed when Hood pled it pro se. (D.E. No. 9.) Hood does not address the Title VII racial discrimination claim in his response or refer to it in his description of his claims. (See D.E. No. 71-1, 4-7.) A plaintiff's failure to respond to an argument in a summary judgment motion is grounds for the Court to deem the opposition waived. See Design Basics, LLC v. Chelsea Lumber Co., 977 F. Supp. 2d 714, 737 (E.D. Mich. 2013) ("Failure to respond is grounds for the Court to deem opposition waived.")

Hood's claim of Title VII racial discrimination is **DISMISSED**.

**V.    Conclusion**

The City's Motion is **GRANTED.**  Hood's claim of retaliatory discharge, claims of retaliatory failure-to-hire, claim of Title VII racial discrimination, and whistleblower claim under the TPPA and common law are **DISMISSED.**

SO ORDERED this 10th day of March, 2021.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE